ROSE FIORE, as Limited Administratrix, etc., of LOUIS FIORE, Deceased, Appellant, v. THE CITY OF NEW YORK, Respondent, Impleaded with JOHN LEVANDOWSKI, Defendant.

Second Department, February 28, 1939.

*William A. Smith,* for the appellant.

*James Hall Prothero* [*William C. Chanler, Corporation Counsel,* and *Ezekiel G. Stoddard* with him on the brief], for the respondent.

HAGARTY, J. There is but one question involved on this appeal, and that is whether or not the acceptance by the plaintiff, individually, of a so-called death benefit from the Temporary Emergency Relief Administration of the State of New York, claimed to have been made pursuant to the provisions of the Temporary Emergency Relief Law (Laws of 1931, chap. 798, as amd. by Laws of 1934, chap. 303) is exclusive and a bar to this action against the defendant City of New York, the employing municipality, to recover damages for personal injuries resulting in the death of plaintiff's intestate.

Plaintiff's intestate, Louis Fiore, was employed as a worker under the provisions of the Temporary Emergency Relief Law. On the 22d day of July, 1935, he was a watchman on a work relief project on Steuben street, in the borough of Richmond. The project consisted of widening, repairing and improving that street. For the purpose of preventing traffic from passing through the street, particularly at the place where men were working, there were erected temporary barricades at Hylan boulevard and Fingerboard road. At about four-thirty in the afternoon of that day the codefendant Levandowski, also a relief worker, removed the barricade and drove his car down the street, causing the injuries to Fiore, as a result of which he died.

Limited letters of administration were issued to Rose Fiore, the plaintiff, on Fiore's estate by the Surrogate's Court of Richmond county on the 19th day of November, 1935. The letters contained the usual injunction as follows: " but as to the aforesaid cause of action these Letters of Administration are limited to the prosecution thereof, and you are hereby restrained as such Administrator from a compromise of such action and the enforcement of any judgment recovered therein until the further order of the Surrogate's Court on filing satisfactory security."

While the petition upon which the limited letters of administration were granted is not here, the decedent left him surviving, as his

heirs at law and next of kin, his widow, the plaintiff, and five children, ranging in age from twelve to twenty-eight years.

On the same day, that is, the 19th day of November, 1935, Rose Fiore, as an individual, representing herself to be the widow of the decedent and the mother of four of the children who were infants, leaving out all reference to the fifth, made formal application in writing to the Relief Administration for death benefits. The claim was allowed and the sum of $3,500 was set aside to meet it. Of this amount the sum of $1,700, at the rate of thirty-two dollars every two weeks, has been paid to her.

This action was brought by the plaintiff, as the administratrix of the estate of her deceased husband, against the defendant City of New York, the employing municipality, and against John Levandowski, the driver of the car. Upon the trial the defendant City of New York moved to amend its answer by alleging as a separate and distinct defense that plaintiff, as "the widow of the said Louis Fiore and his administratrix," duly applied to the Relief Administration for an award on account of the death of Louis Fiore, pursuant to the Temporary Emergency Relief Law, that a death benefit was awarded to and accepted by her, and that such allowance is exclusive of all other remedies and relieves the city, the employing municipality, of all further liability. That motion was granted. The issue thereby raised was severed and tried, the judgment under review dismissing the complaint as against the defendant City of New York was entered, and the case was continued as against the defendant Levandowski. It is not urged here that plaintiff made application in the capacity of administratrix, as the respondent's proof on the trial was all to the effect that application was made by her as an individual and the allowance paid to her as such. The question here involves the sufficiency of that defense.

The Legislature, by its original enactment (Laws of 1931, chap. 798), created the Relief Administration as an agency through which work relief projects of the State and its political subdivisions might be carried on and the respective resources and contributions merged into a single fund. The burden upon the local authorities of carrying compensation insurance was thereafter found to be unduly onerous (See informal opinion of Attorney-General, 54 State Dept. Rep. 326), and in April of 1934 the Governor transmitted a message to the Legislature urging the adoption of an amendment to the law whereby "the expense for disability allowance will be shared by the State, the Federal government and the municipalities in the same way as the regular relief cost." (49 State Dept. Rep. 34, 36.) The result was that on the 27th day of April, 1934, chapter 303

of the laws of that year added an amendment. It is that amendment which the respondent invokes, claiming that it provides an exclusive remedy, with which it has complied, and that, therefore, the maintenance of this action is barred.

The amendment is section 16-a of chapter 798 of the Laws of 1931, and consists of five subdivisions. The first subdivision provides that persons employed on work relief projects and receiving "work relief" shall not be deemed to come within the provisions or benefit of the Workmen's Compensation Law. The second subdivision provides that in the event of injury or disease arising out of and in the course of the work relief, resulting in death, permanent total disability, or permanent partial disability, the administration "may provide such allowance as it may deem proper," but not in excess of $3,500, inclusive of funeral expenses. Within that limit "the administration shall determine the amount and manner of payment of said disability allowance to be made," as to which and as to any and all questions arising thereunder, the determination of the administration shall in every case be final and not subject to appeal or review. The third subdivision reads: " The allowances made for said disabilities and/or the relief furnished to the injured work relief employee during the period of said disability shall be exclusive and shall relieve the employing municipal corporation, town, or State from any and all further liability by reason thereof."

Inasmuch as the word " disabilities " is alone used in this subdivision, and there is no express reference to the death benefit contemplated in the preceding subdivision, the appellant's claim here is that the third subdivision does not include death benefits, and, therefore, it was not the intention of the Legislature to provide that allowances for death benefits should be exclusive of all other remedies. Although, ordinarily, the word " disability " does not express the same meaning as the word " death " (*Hill* v. *Travelers Ins. Co.*, 146 Iowa, 133; 124 N. W. 898), it is clear that it was so intended in this instance. The term " disability allowance " is used in the second subdivision in a manner that leaves no doubt that it refers as well to death benefits, inclusive of funeral expenses. To except death benefit allowance from the operation of the third subdivision would involve a construction, in effect, that such allowance was but a gratuity and not a mode of redress. The context of the entire chapter makes clear the intention of the Legislature.

At the time the widow made her claim and, presumably, at the time the claim was allowed, the relief bureau had no information concerning plaintiff's application for her appointment as administratrix of the estate or that she had been so appointed. In her claim she named only the four of her five children who were minors,

describing herself as "widow of Louis Fiore, and mother of the following children by the deceased." With her claim she signed the following instrument: "I, Rose Fiore, being of legal age, living at 2337 Forest Avenue, Borough of Richmond, City of New York, City and State of New York, widow of Louis Fiore who was killed on July 22nd, 1935, while employed on work relief, having elected to pursue my third party action against John Levandowski, et al., in consideration of receiving $3,500 death benefits from the State of New York as provided in Chapter 303 of the Laws of 1934, do hereby agree that I will not settle or discontinue any claim or suit which I now have against the said John Levandowski, et al., without securing the written consent of the Temporary Emergency Relief Administration; and I also agree that all amounts and/or death benefits received by me from the State of New York shall be a lien against the proceeds of the settlement or judgment against John Levandowski, et al."

It was upon that document and "the accident involved" that the allowance was based, so testified the claim representative of the Relief Administration. But as administratrix, plaintiff is not bound by her acts in claiming the death benefit and accepting payments thereunder as an individual. (*Balais* v. *Brady & Gioe*, 189 App. Div. 408; affd., without opinion, 228 N. Y. 507.)

My opinion is that the allowance and payment of the death benefit, on the facts in this case, do not constitute a bar to the maintenance of this action. The Constitution of the State of New York (Art. 1, § 18) provides:

"Damages for injuries causing death.— § 18. The right of action now existing to recover damages for injuries resulting in death, shall never be abrogated; and the amount recoverable shall not be subject to any statutory limitation."

In accordance therewith, and pursuant to article 5 of the Decedent Estate Law, damages recovered in an action for wrongful death by an administratrix "or obtained through settlement without action" inure to the benefit of the next of kin, who are the children here, and of the widow, as if such damages were unbequeathed assets. (Dec. Est. Law, §§ 130, 133.) As "next of kin," the children of the intestate may not be deprived of their interest in the right of action by the unauthorized application and acceptance of benefits by an individual, even though such individual be their mother.

The Constitution, however, was amended in 1913 so as to render constitutional the remedies to be provided by the contemplated

enactment of the second Workmen's Compensation Act by the addition to article I of section 19, ▌ which reads:

"Workmen's compensation.— § 19. Nothing contained in this Constitution shall be construed to limit the power of the Legislature to enact laws for the protection of the lives, health, or safety of employees; or for the payment, either by employers, or by employers and employees or otherwise, either directly or through a State or other system of insurance or otherwise, of compensation for injuries to employees or for death of employees resulting from such injuries without regard to fault as a cause thereof, except where the injury is occasioned by the willful intention of the injured employee to bring about the injury or death of himself or of another, or where the injury results solely from the intoxication of the injured employee while on duty; or for the adjustment, determination and settlement, with or without trial by jury, of issues which may arise under such legislation; or to provide that the right of such compensation, and the remedy therefor shall be exclusive of all other rights and remedies for injuries to employees or for death resulting from such injuries; or to provide that the amount of such compensation for death shall not exceed a fixed or determinable sum; provided that all moneys paid by an employer to his employees or their legal representatives, by reason of the enactment of any of the laws herein authorized, shall be held to be a proper charge in the cost of operating the business of the employer."

Pursuant to that amendment the Legislature passed the Workmen's Compensation Law (Laws of 1914, chap. 41). That law, since amended, specifically provides that " The provisions of this chapter shall not apply to persons receiving ' work relief ' and employed on work relief projects under the provisions of chapter seven hundred ninety-eight of the laws of nineteen hundred thirty-one as amended." (Laws of 1934, chap. 769. See, also, Laws of 1934, chap. 303, § 16-a.) Recourse to the provisions of the Workmen's Compensation Law is helpful, by analogy, in determining whether or not the provisions of the Temporary Emergency Relief Law come within the purview of the amendment to the Constitution. Section 16 of that law provides for compensation in the form of death benefits, and is comprehensive in its precise allocation of those benefits to a surviving wife or dependent husband and children under the age of eighteen years, and to those children of any age who are dependent, blind or crippled. The number and character of the survivors also determine the allocation. Thus the disposition is fixed as a matter of law. When the provisions of the

law have been complied with, inasmuch as the remedy thereunder is exclusive, no further cause of action remains in the legal representative of the decedent's estate. The provisions of the act, in accordance with the constitutional amendment, are exclusive even though the next of kin as defined by the Decedent Estate Law (*supra*) receive no compensation thereunder. (*Shanahan* v. *Monarch Engineering Co.*, 219 N. Y. 469.)

Thus, the Legislature is empowered to substitute a new remedy by way of death benefits to a class consisting of dependents of a deceased employee. (*Travelers Ins. Co.* v. *Padula Co.*, 224 N. Y. 397, 406.) Of course, if it does not effectuate such a substitution of remedies, then that afforded by action for wrongful death subsists. CARDOZO, J., writes in *Warren* v. *Morse Dry Dock & Repair Co.* (235 N. Y. 445, 448): " The Legislature intended, in passing that act [Workmen's Compensation Law], not to abolish every remedy, but to substitute one remedy for another. It has no power, indeed, under the State Constitution (Art. I, § 18) to abrogate the right of action for injuries resulting in death, except by supplying to the dependents of employees a new form of compensation (Constitution, art. I, § 19). It may change the groups or classes of dependents (*Shanahan* v. *Monarch Engineering Co.*, 219 N. Y. 469). It may not say that those whom it classifies as dependents shall be left without a remedy. To the extent that the substitution of a new remedy is ineffective, the old one survives."

Analysis of the amendment to the Temporary Emergency Relief Law (Laws of 1934, chap. 303) leads to the conclusion that no more was intended thereby than the adoption of a means of settlement of a claim resulting from the accidental death of a relief worker, regardless of legal liability. Clearly, it does not purport to provide an exclusive remedy. The making of a claim under it is optional. The fourth subdivision thereof provides that all claims shall be made and filed with the administration within thirty days. Failure to file within that period merely precludes a claimant from seeking the allowance which the administration, within its discretion, might otherwise have awarded, and does not bar a legal representative from maintaining an action at law. (*Richards* v. *Town of Stillwater*, 244 App. Div. 868.) Even if application be made the administration is not required to make an award. If no award be made and accepted the right to maintain an action survives.

Had the Legislature intended to substitute a new remedy, as an essential element thereof it would have specified the class of dependents to receive the allowance and designated the allocation thereof within the class. The amendment will be searched in vain for any

such provisions. The Legislature contemplated no change in the plan of distribution from that set forth in section 133 of the Decedent Estate Law.

No new remedy was, therefore, provided under this amendment. It simply afforded the administrator of a deceased employee, subject to the injunction contained in his letters, an opportunity to settle the claim by making application for an award which might be allowed within the given sum of $3,500. Such award would be in the nature of an offer of settlement, and when accepted and consummated by the administratrix under the direction of the court, would be conclusive. In the case at bar, no such settlement was effected in accordance with law, and, therefore, plaintiff is not barred from maintaining the present action.

The effect of the instrument executed by the plaintiff as an individual, affording the Relief Administration a lien upon the proceeds of a judgment or settlement arising out of this action to the extent of the moneys paid to her, is not within the scope of this appeal. (*Larscy* v. *Hogan & Sons*, 239 N. Y. 298, 302.)

For the foregoing reasons, the judgment should be reversed on the law and a new trial granted, with costs to appellant to abide the event.

LAZANSKY, P. J., DAVIS, ADEL and TAYLOR, JJ., concur.

Judgment dismissing complaint on the merits reversed on the law and a new trial granted, with costs to appellant to abide the event.